IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION


ROBERT H. JOHNSTON, III, Individually and
as father and Guardian of the Person and Estate of
EMMA KATE JOHNSTON, a Minor, and on
Behalf of the Wrongful Death Beneficiaries of
Jennifer Nicole Stephens, Deceased

PLAINTIFFS

V. CIVIL ACTION NO. 3:15CV29

NATIONWIDE MUTUAL INSURANCE COMPANY
and JASON ALLEN WHITE                                              DEFENDANTS


**ORDER**

This cause comes before the court on the motion of plaintiff Robert H. Johnston, III to remand this case to the Circuit Court of Desoto County, Mississippi. Defendants Nationwide Mutual Insurance Company ("Nationwide") and Jason Allen White have responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and should be granted.

This is an uninsured motorist (UM) case arising out of a September 18, 2011 accident in which a vehicle driven by Nicholas McCown struck and fatally injured Jennifer Nicole Stephens, who was engaged to be married to plaintiff at the time of her death.[1] On September 17, 2014, plaintiff filed the instant action in Desoto County Circuit Court, seeking recovery against both Nationwide, his UM carrier, and Jason Allen White, the insurance agent who sold him the UM

---

[1] Plaintiff has settled his claims against McCown and his liability insurance carrier.

1

policy in question. On February 5, 2015, defendants removed the case to this court on the basis of diversity jurisdiction.

Plaintiff has presently moved to remand, arguing that diversity jurisdiction is lacking, inasmuch as he and White are both citizens of Mississippi. Defendants argue, however, that White was fraudulently joined in this action and that his Mississippi citizenship should therefore be disregarded for diversity purposes and that he should be dismissed from this action. In considering defendants' arguments in this regard, the court initially notes that the removing party bears the difficult burden of demonstrating that jurisdiction is proper due to fraudulent joinder. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992). "The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000). There are two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse [defendant] in state court." *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003). Rather than a "mere theoretical possibility of recovery," there must "at least be arguably a reasonable basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder." *Travis*, 326 F.3d at 648 (*citing Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 n. 4 (5th Cir. 2000)).

In the court's view, a thorough discussion of the fraudulent joinder doctrine requires recognition of the great changes in the Fifth Circuit's approach to this doctrine during the last decade. Prior to 2004, the Fifth Circuit, essentially alone among the federal circuits, applied a highly expansive version of the fraudulent joinder doctrine which resulted in the doctrine being found applicable in far more cases than in any other circuit. As it has done previously, this court

finds it helpful to quote from a 2005 law journal article written by University of Mississippi law professor E. Farish Percy to illustrate this point. In her article, Percy wrote that a Westlaw search revealed the following numbers of district court opinions mentioning the term "fraudulent joinder," divided by circuit:

|      |     |
|------|-----|
| 1st  | 15  |
| 2nd  | 47  |
| 3rd  | 94  |
| 4th  | 69  |
| 5th  | 918 |
| 6th  | 66  |
| 7th  | 74  |
| 8th  | 43  |
| 9th  | 94  |
| 10th | 24  |
| 11th | 113 |

*See* E. Farish Percy, Making a Federal Case of It: Removing Civil Cases to Federal Court Based on Fraudulent Joinder, 91 Iowa L. Rev. 189, 240 tbl. 1 (2005). It should thus be clear that, at one time, the Fifth Circuit's fraudulent joinder jurisprudence was something of an anomaly among the federal circuits.

In its seminal decision in *Smallwood v. Illinois Central Railroad Co.,* 385 F.3d 568 (5th Cir. 2004), however, the *en banc* Fifth Circuit brought its fraudulent joinder jurisprudence more in line with that of other circuits. In *Smallwood*, the Fifth Circuit made it clear that district courts should generally apply a standard of review which is far more deferential to the allegations made by the plaintiff than had previously been the case in this circuit. The Fifth Circuit in *Smallwood* gave the following directives to district courts in conducting this inquiry:

> A court may resolve th[is] issue in one of two ways. The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper

3

joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may in its discretion, pierce the pleadings and conduct a summary inquiry.

*Smallwood*, 385 F.3d at 573.

In the court's experience, *Smallwood* has resulted in a dramatic reduction in the number of fraudulent joinder removals in this state, though this is not to say that there are no situations where the doctrine still applies. One notable area where the doctrine still finds frequent application is in nursing home cases, since the Mississippi Supreme Court held in the 2006 decision of *Howard v. Estate of Harper*, 947 So.2d 854, 856–62 (Miss. 2006) that there is no common law or statutory duty of care owed by a nursing home administrator to the nursing home's patients. Prior to *Howard*, nursing home plaintiffs frequently named nursing home administrators as defendants, thereby defeating diversity jurisdiction in many cases. However, in light of *Howard*'s clear and unequivocal holding, any attempt to name an administrator as a diversity-destroying defendant today generally gives rise to a removal and a dismissal of the administrator in federal court based on fraudulent joinder. *See, e,g, Johnson v. Trinity Mission Health & Rehab of Clinton, LLC*, 2015 WL 4506898, at *2 (S.D. Miss. 2015).

In the court's view, the legal clarity with which the Mississippi Supreme Court barred negligence claims against nursing home administrators in *Howard* stands in stark contrast to the far more ambiguous approach which it has taken with regard to negligence claims against insurance agents, such as the claims against White in this case. While the Supreme Court has indicated that an agent may not be held liable for failing to advise an insured regarding his or her insurance needs, the Court has also stated that, if an agent does undertake to provide advice, then he may be held liable for any negligence in doing so. In *Mladineo v. Schmidt*, for example, the

4

Mississippi Supreme Court wrote that:

> We go further to clarify that, contrary to a minority of jurisdictions, we do not find that insurance agents in Mississippi have an affirmative duty to advise buyers regarding their coverage needs. The majority of jurisdictions have stated strong policy reasons for finding that an agent does not have an affirmative duty to advise the insured of coverage needs: insureds are in a better position to assess their assets and risk of loss, coverage needs are often personal and subjective, and imposing liability on agents for failing to advise insureds regarding the sufficiency of their coverage would remove any burden from the insured to take care of his or her own financial needs. <u>However, we find that if agents do offer advice to insureds, they have a duty to exercise reasonable care in doing so.</u> A jury should be allowed to decide whether reasonable care was exercised here.

52 So. 3d 1154, 1160 (Miss. 2010) (emphasis added). Thus, there is a clear potential for an insurance agent to be held liable under Mississippi law for negligent advice provided to an insured, although, based on the parties' briefing, the scope of such potential liability appears to be subject to some uncertainty.

That brings this court to defendants' proof of fraudulent joinder in this case. Defendants emphasize that, in his complaint, Johnston provided rather vague allegations of negligence on the part of White, merely stating that:

> Defendant Jason Allen White, an insurance agent, who sold the above to the Plaintiff, was negligent for failing to adequately advise Plaintiff as to the coverage needed to protect all members of his household from uninsured/underinsured motorists and/or failing to advise Plaintiff to add the decedent to his policy as a named insured.

In an affidavit which he submitted in support of his motion to remand, however, Johnston set forth far more specifics in this regard, making it clear that he was seeking to hold White liable under a *respondeat superior* theory for allegedly incorrect advice which was given by his assistant. In his brief, plaintiff describes his allegations in this regard as follows:

> 6. Jennifer Nicole Stephens, Plaintiff's fiancé, mother of their infant child, with whom he lived, went to the office of Jason Allen White, a Nationwide insurance

5

agent, not long before Jennifer was hit while walking and killed by an underinsured teenage driver who had looked down at his radio. Plaintiff had purchased a Nationwide policy on his own vehicle years before at a time when a Mr. Fesmire was the Nationwide agent. Subsequently Jason Allen White took over the agency and the Plaintiff continued to use the agency to maintain his Nationwide coverage. Most of the time Plaintiff dealt with Jody Woody, an employee of Mr. Fesmire and subsequently of Mr. White. She appeared to speak for and act on behalf of the agents and Nationwide at all times. Further she appeared to be knowledgeable of automobile insurance and the Plaintiff came to rely upon Ms. Woody as well as Mr. White.

7. When Jennifer and the Plaintiff went to Mr. White's office, Plaintiff asked Ms. Woody to add Jennifer and her vehicle to his policy of insurance. Ms. Woody inquired about the present coverage and Jennifer stated that her father had dropped the coverage on her vehicle when she indicated she had planned to be added to the Plaintiff's policy. Ms. Woody suggested that Jennifer reinstate her old policy before adding her vehicle to the Plaintiff's policy. That did not occur before Jennifer was killed.

8. Plaintiff had only a vague understanding of uninsured motorist coverage.

9. Ms. Woody never mentioned any problem with coverage pertaining to Jennifer except coverage on Jennifer's vehicle itself. Ms. Woody never explained anything about uninsured or underinsured motorist coverage to Plaintiff or Jennifer. Neither Plaintiff nor Jennifer were given any documents and they did not sign any waiver of uninsured motorist coverage.

10. It was Plaintiff's desire at all times that all the members of his household would be adequately insured for tragedies such as this. While Plaintiff understood the vehicle itself would not be covered, this was not of great concern because it did not have a great deal of value. Plaintiff understood that Jennifer would be covered when driving his vehicle and that Jennifer and their daughter would receive all the benefits of his policy as a member of his household. Their infant daughter was not named in Plaintiff's policy of insurance but he understands she would have been covered. Ms. Woody never indicated that it made any difference that Jennifer and the Plaintiff had not been through a wedding ceremony. In this day and age it is very common for fiancés to live together, to have children together, etc. Ms. Woody never gave any indication that Jennifer would be treated differently than their daughter.

[Plaintiff's brief at 2-3].

In their briefing, defendants appear to tacitly concede that, if the substance of plaintiff's

affidavit is considered, then he has a considerably stronger case for remand than if the court limits its analysis to the allegations of his complaint. Defendants argue that, in conducting its fraudulent joinder analysis, this court should limit itself to the allegations of plaintiff's complaint, but this argument strikes this court as being simply incorrect. As quoted above, the Fifth Circuit in *Smallwood* specifically stated that "there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder" and that "[i]n such cases, the district court may in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* at 573. The fact that the Fifth Circuit chose the word "misstated" is significant, since it implies a flexible inquiry which allows a plaintiff to supplement any incomplete or mis-stated allegations in the complaint with extrinsic evidence.

The Fifth Circuit's approach in *Smallwood* strikes this court as being entirely logical, since the issue in the fraudulent joinder context is whether the plaintiff would have a reasonable possibility of recovery against the non-diverse defendant in state court. As such, holding a plaintiff to the allegations of his complaint in determining fraudulent joinder issues would ignore the simple reality that Mississippi law, like that of most states, provides for liberal amendments of complaints. *See* Miss. R. Civ. Pro. Rule 15. Thus, there is clearly a reasonable possibility that plaintiff would be allowed to amend his complaint in response to a motion to dismiss filed in state court, and this court can discern no argument as to why this fact should be ignored in the fraudulent joinder context. Defendants argue that any such amendment would be barred by the statute of limitations, but Miss. R. Civ. 15(c) clearly provides that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set

7

forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

This court would hasten to add that it does not seek to predict how the litigation of the claims against White will play out in state court, and it has deliberately limited its analysis of the substance of these claims, in deference to Mississippi state courts' interest in deciding these issues on their own. Suffice it to say, however, that this court finds there to be a reasonable possibility that a Mississippi trial court would allow plaintiff to amend his complaint to more specifically set forth his allegations against White. The court further finds a reasonable possibility that such a court would consider plaintiff's affidavit prior to deciding whether White should be dismissed from the case. Finally, the court finds a reasonable possibility that, having considered this evidence, a state court would conclude, based on *Mladineo*, that plaintiff has managed to create fact issues regarding whether White, acting through his assistant, failed to exercise reasonable care in providing insurance advice to plaintiff. In so concluding, the court stresses that it is merely assessing reasonable *possibilities*, and it is by no means suggesting that any claims against White should (or should not) survive a motion for summary judgment in state court. This is an issue for the state court to determine on remand.

The court therefore finds there to be a reasonable possibility that plaintiff will recover against White in state court, and diversity jurisdiction is therefore lacking in this case. Plaintiff's motion to remand will therefore be granted.

It is therefore ordered that plaintiff's motion to remand is granted, and this case is hereby

remanded to the Circuit Court of Desoto County.

SO ORDERED, this the 14th day of September, 2015.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**